*944 OPINION.
Smith :
The petitioners’ first contention in this proceeding is that the $60,000 received by them in 1929 and 1930 did not constitute taxable income for 1934, or for any other year, within the meaning of the word “income” as defined in Eisner v. Macomber, 252 U. S. 189. The Revenue Act of 1934 requires the inclusion in gross income of gains, profits, and income derived from “sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * * or gains or profits and income derived from any source whatever.” (Section 22 (a).) At the close of 1934 the petitioners were in possession of their property which they had contracted to sell to the Tishman Realty Co. and also of $60,000 cash which they had received from the Tishman Realty Co. upon its executory contract of sale entered into in 1929. The Board is of the opinion that there is no merit in the petitioners’ contention that this $60,000 did not constitute taxable income to them in some year.
The only question which remains to be decided is whether the $60,-000 constituted taxable income of 1934. The petitioners contend that it was either taxable income of 1929 and 1930, as shown by the amended returns filed for those years, or of 1931, when the contract was alleged to have been breached by the Tishman Realty Co. The *945 respondent contends that the entire $60,000 constituted taxable income of the petitioners for 1934 and in support of that contention cites Virginia Iron Coal & Coke Co., 37 B. T. A. 195; aff'd. (C. C. A., 4th Cir.), 99 Fed. (2d) 919. The question presented in that case was whether certain payments received by the Virginia Iron Coal & Coke Co. in 1931 and 1932 upon option contracts to sell real estate constituted taxable income of 1933, the year in which the optionee elected to forfeit the payments made upon the option contract. The Board and the court both held that the forfeited payments constituted taxable income of 1933. To the same effect is Miles Realty Co., 31 B. T. A. 443, and Dexter Sulphite Pulp & Paper Co., 23 B. T. A. 227. The syllabus of our opinion in the Miles Realty Co. case, supra, reads as follows:
Where land is sold on the installment plan under contracts which provided in substance that, if the buyer breached the contract, it should thereupon become null and void without any act on the part of the seller, and that all amounts paid and improvements made should be retained by the seller, who was entitled to immediate repossession, as liquidated damages, held, (a) some affirmative action is necessary on the part of the seller to cancel the contract and declare the forfeiture; (b) the seller may by conduct, or expressly, extend time after he has the option to cancel and forfeit; (c) until such time as the seller elects to forfeit the contract, the payments and improvements subject to forfeiture do not constitute income to the seller.
We said in our opinion:
It seems to us that under the facts of this case, the contracts were voidable only and that as petitioner not only took no steps to enforce the forfeiture, but after default endeavored to make further collections, forfeitures did not occur until 1928, when the contracts were formally canceled on the books. * * *
We, therefore, reversed the action of the Commissioner in taxing the forfeitures in 1926 and 1927 and sustained the claim of the taxpayer that the amounts constituted taxable income of the year 1928.
In Dexter Sulphite Pulp & Paper Co., supra, the facts were that a vendee in 1920 paid $100,000 upon an executory contract for the sale of property. In 1921 the vendee refused to make a further payment upon the contract and the company brought suit for damages. The litigation was settled and the company received a large amount for damages in 1921. The Board held that both the payment made in 1920 and the amount collected as damages in 1921 constituted taxable income of 1921.
Although the Tishman Fealty Co. in the proceeding at bar breached the executory contract which it had with the petitioners for the purchase of the property, the petitioners elected to overlook such breach. They were insistent that the Tishman Eealty Co. live up to its contract and instituted suit against it in 1933 for the specific performance of the contract. It was not until 1934 that the court dismissed the suit for specific performance and also dismissed the coun *946 terclaim of the Tishman Eealty Co. for a repayment to it by the petitioners of the $60,000 which it had paid them in 1929 and 1930, together with interest thereon. It was not until 1934 that the petitioners learned as a result of the decision of the court that they could not obtain specific performance of the contract and that the $60,000 which they had received from the Tishman Realtjr Co. was not subject to repayment. The Board is of the opinion that the respondent correctly determined that the gain of $60,000 constituted taxable income of the petitioners for 1934.
Relative to the claim of the petitioners that the $35,000 received in 1929 and the $25,000 received in 1930 constituted taxable income of those years, and not of 1934, it may be observed that if the contract for the sale of the property had not been breached by the Tish-man Realty Co. the total amount to be received by the petitioners would not constitute taxable income, but only the amount over the cost or March 1, 1913, value of the property, whichever was greater. In their petition the petitioners alleged that the March 1, 1913, value of the property was $90,000. This was denied by the respondent in his answer and no proof was offered upon the point. Since the taxable income would not have been the entire amount of $60,000 if the contract had been carried out the Board is of the opinion that the amounts received in 1929 and 1930 did not constitute taxable income of the petitioners for those years. Cf. Burnet v. Logan, 283 U. S. 404.
Undoubtedly, also, the petitioners would have been warranted in declaring in 1931 that the contract had been breached by the Tish-man Realty Co. and that the down payments had been forfeited in 1931. But the petitioners did not elect to declare the contract forfeited in 1931. Therefore, we are of the opinion that the $60,000 received in 1929 and 1930 was not taxable income of the petitioners for 1931.

Judgment will be entered for the resfondent.